## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

Docket Number(s): 24-2606      Caption [use short title]

Motion for: Pretrial Release

Set forth below precise, complete statement of relief sought:

Sean Combs requests that this Court order his release on appropriate bail conditions, and order his immediate release pending disposition of this appeal under Federal Rule of Appellate Procedure 9(a)(3).

United States of America v. Combs

MOVING PARTY: Sean Combs      OPPOSING PARTY: United States of America

☐ Plaintiff    ☒ Defendant

☒ Appellant/Petitioner    ☐ Appellee/Respondent

MOVING ATTORNEY: Alexandra A.E. Shapiro      OPPOSING ATTORNEY: Mary Christine Slavik

[name of attorney, with firm, address, phone number and e-mail]

Shapiro Arato Bach LLP      United States Attorney's Office, SDNY

1140 6th Ave, 17th Fl., New York, NY 10036      26 Federal Plaza, New York, NY 10278

(212) 257-4880; ashapiro@shapiroarato.com      (212) 637-1113; mary.slavik@usdoj.gov

Court- Judge/ Agency appealed from: Hon. Andrew L. Carter / U.S. District Court for the Southern District of New York

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes ☐ No (explain):

Opposing counsel's position on motion:
☐ Unopposed ☒ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☒ Yes ☐ No ☐ Don't Know

Is the oral argument on motion requested? ☒ Yes ☐ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☐ Yes ☒ No  If yes, enter date:

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☐ No

Requested return date and explanation of emergency:

**Signature of Moving Attorney:**

/s/ Alexandra A.E. Shapiro    Date: October 8, 2024    Service : ☒ Electronic ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

# 24-2606

United States Court of Appeals
*for the*
Second Circuit

▶▶◀◀

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

SEAN COMBS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK, 24-CR-542 (AS)

## APPELLANT'S MOTION FOR PRETRIAL RELEASE

ALEXANDRA A.E. SHAPIRO
JASON A. DRISCOLL
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas,
17th Floor
New York, New York 10036
(212) 257-4880

*Attorneys for Defendant-Appellant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................... ii

INTRODUCTION ....................................................................... 1

ISSUES PRESENTED ................................................................. 3

BACKGROUND ......................................................................... 3

    A.   Mr. Combs' Actions During The Investigation Demonstrate
         That He Poses No Conceivable Risk Of Flight ................................ 3

    B.   Arrest and Charges ........................................................ 5

    C.   Bail Proceedings .......................................................... 6

        1.   The Government's Proffer Focused On An 8½-year-old
            Domestic Violence Incident And Vague Allegations
            Related To Civil Lawsuits ......................................... 6

        2.   The Defense Rebutted Each Of The Government's
            Arguments ........................................................ 7

    D.   Mr. Combs Proposed A Robust Bail Package With Extremely
         Restrictive Conditions ................................................... 10

    E.   The District Court's Ruling ............................................... 12

STANDARDS OF REVIEW .......................................................... 13

ARGUMENT .......................................................................... 14

   I.   The District Court Erroneously Concluded That Mr. Combs
      Presented A Risk Of Obstructing Justice And Witness Tampering ......... 14

   II.  The District Court Erroneously Concluded No Conditions Of
      Release Could Suffice ....................................................... 17

   III. The District Court Erroneously Failed To Make Factual Findings
      And Weigh The Required 18 U.S.C. § 3142(g) Factors ..................... 21

CONCLUSION ....................................................................... 24

i

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Arthur Andersen v. United States*,
   544 U.S. 696 (2005) ...........................................................................19

*United States v. Aguilar*,
   515 U.S. 593 (1995) ...........................................................................19

*United States v. Alston*,
   420 F.2d 176 (D.C. Cir. 1969).............................................................21

*United States v. Bankman-Fried*,
   No. 23-6914-cr (2d Cir. Sept. 21, 2023) .............................................16

*United States v. Berrios-Berrios*,
   791 F.2d 246 (2d Cir. 1986) ...................................................... 1, 17, 24

*United States v. Chimurenga*,
   760 F.2d 400 (2d Cir. 1985) ...............................................................15

*United States v. Dreier*,
   596 F. Supp. 2d 831 (S.D.N.Y. 2009) .................................................19

*United States v. English*,
   629 F.3d 311 (2d Cir. 2011) ........................................................ 13, 22

*United States v. Epstein*,
   425 F. Supp. 3d 306 (S.D.N.Y. 2019) .................................................23

*United States v. Ferranti*,
   66 F.3d 540 (2d Cir. 1995) .................................................................13

*United States v. Friedman*,
   837 F.2d 48 (2d Cir. 1988) .................................................................24

*United States v. Kelly*,
   No. 19-CR-286 (AMD), 2020 WL 2528922 (E.D.N.Y. May 15, 2020)..............23

*United States v. LaFontaine*,
  210 F3d 125 (2d Cir. 2000) ............................................... 13, 14, 16, 23

*United States v. Leon*,
  766 F.2d 77 (2d Cir. 1985) ........................................................ 14, 16

*United States v. Martir*,
  782 F.2d 1141 (2d Cir. 1986) ..............................................23

*United States v. Mattis*,
  963 F.3d 285 (2d Cir. 2020) ....................................... 21, 22, 23

*United States v. Maxwell*,
  20-CR-330 (AJN) (S.D.N.Y.), ECF 93 ..............................22

*United States v. Maxwell*,
  527 F. Supp. 3d 659 (S.D.N.Y. 2021) ...............................22

*United States v. Raniere*,
  No. 18-CR-204-1 (NGG), 2018 WL 3057702 (E.D.N.Y. June 20, 2018)..........23

*United States v. Sabhnani*,
  493 F.3d 63 (2d Cir. 2007) ................................................18

*United States v. Salerno*,
  481 U.S. 739 (1987) ............................................. 2, 21, 22

*United States v. Shakur*,
  817 F.2d 189 (2d Cir. 1987) ..................................... passim

*United States v. Stein*,
  05-CR-0888 (LAK), 2005 WL 8157371 (S.D.N.Y. Nov. 14, 2005) ..................16

*United States v. Williams*,
  No. 07-CR-1102 (JSR), 2008 WL 686622 (S.D.N.Y. Mar. 12, 2008) ...............18

## Statutes

18 U.S.C. §1503 ....................................................................19

18 U.S.C. §1512....................................................................19

iii

18 U.S.C. §1591 ................................................................................5

18 U.S.C. §1962 ................................................................................5

18 U.S.C. §2421 ................................................................................5

18 U.S.C. §3142 .......................................................................... passim

18 U.S.C. §3145 ................................................................................2

18 U.S.C. §3148 ..............................................................................16

**Rules**

Fed. R. App. P. 9 ..............................................................................2

## INTRODUCTION

Bail "may be denied only in a rare case of extreme and unusual circumstances." *United States v. Berrios-Berrios*, 791 F.2d 246, 251 (2d Cir. 1986). This case does involve "extreme and unusual circumstances"—but none that typically foreclose bail or warrant forcing Sean Combs to defend himself from a prison cell. What is extreme and unusual about this case is that Mr. Combs was detained immediately after he was charged, even though he has been in the spotlight his entire life, with many of his purported antics and episodes being widely reported in the press and known to law enforcement authorities. Indeed, hardly a risk of flight, he is a 54-year-old father of seven, a U.S. citizen, an extraordinarily successful artist, businessman, and philanthropist, and one of the most recognizable people on earth. The sensationalism surrounding his arrest has distorted the bail analysis: Mr. Combs was not released pending trial, even though he offered to comply with restrictive conditions that would have prevented any conceivable risk of flight or danger.

The district court detained Mr. Combs in a conclusory, barebones oral ruling, apparently because of unspecified concerns that he would "obstruct justice and intimidate witnesses." The government's arguments about the risk of obstruction were based on speculation, resting mainly on untested allegations about communications with witnesses in *civil* cases and communications initiated by

1

supposed witnesses and not Mr. Combs.  The government even claimed his public denial of a former girlfriend's allegations in a civil lawsuit constituted "attempts to obstruct justice."  If denying accusations by civil plaintiffs could justify pre-trial detention, the liberty protections of the Bail Reform Act and the Constitution—not to mention the First Amendment—would be meaningless.

Throughout the bail proceedings below, Mr. Combs rebutted the government's proffers.  But without factfinding or analysis, the district court endorsed the government's exaggerated rhetoric and ordered Mr. Combs detained. In so doing, the court committed legal error, rejected a plainly sufficient bail package, and violated its obligations under the Bail Reform Act.

Mr. Combs is presumed innocent.  He traveled to New York to surrender because he knew he was going to be indicted.  He took extraordinary steps to demonstrate that he intended to face and contest the charges, not flee.  He presented a bail package that would plainly stop him from posing a danger to anyone or contacting any witnesses.  Under the Bail Reform Act, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

Mr. Combs is entitled to release under Federal Rule of Appellate Procedure 9 and 18 U.S.C. §3142 and §3145 and immediate release pending disposition of this appeal under Federal Rule of Appellate Procedure 9(a)(3).

## ISSUES PRESENTED

1.      Whether the district court's obstruction and witness tampering conclusion lacked a factual basis and misapplied the law.

2.      Whether the district court erred in concluding no conditions would reasonably assure the safety of any other person and the community.

3.      Whether the district court erroneously failed to make the factual findings required by the Bail Reform Act and weigh the required statutory factors.

## BACKGROUND

**A.      Mr. Combs' Actions During The Investigation Demonstrate That He Poses No Conceivable Risk Of Flight**

Long before his indictment, Mr. Combs took numerous steps demonstrating his trustworthiness and commitment to proving his innocence in this case.  Since early 2024, he understood he was the target of a serious federal investigation. Nonetheless, he immediately directed his counsel to proactively reach out to prosecutors.  He subsequently took extraordinary steps to voluntarily surrender and try to satisfy any possible government concerns about flight risk.

Months before the indictment, on March 13, 2024, Mr. Combs's counsel emailed the assigned AUSAs to introduce himself and asked to speak with the prosecutors so he could provide information about the case.  A-94.  He renewed that request five days later.  *Id.*  The government never responded.

3

On March 25, 2024, the government executed search warrants at Mr. Combs' residences in Miami and Los Angeles.  A-44.  Mr. Combs was personally searched, as was his airplane.  *Id.*  Counsel agreed to accept service of two grand jury subpoenas to Mr. Combs' businesses.  *Id.*

On April 1, 2024, defense counsel took custody of Mr. Combs' passport and advised the government that it would not be returned to him and he would not leave the country.  A-92.  Counsel also promised to advise the government in advance of any domestic travel by Mr. Combs, and did so—sharing his whereabouts and travel plans at least 9 times from May to August 2024.  A-96-105.

Mr. Combs also put his private airplane up for sale because of the investigation and notified the government accordingly.  *See* A-105.  And he advised that multiple relatives—including his mother and four minor daughters—had given counsel their passports.  *See* A-107.

Mr. Combs also paid off the outstanding debt of $18 million on his $48 million home on August 20, 2024, so it could provide unencumbered security for any future bail package.  A-42, A-46, A-88-89.

During this time, counsel continued conferring with the government regarding its grand jury subpoenas.  Counsel withdrew prior counsel's motions to

4

quash, conducted voluminous searches, and produced over 144,000 pages of documents.  A-46.

Finally, when counsel informed Mr. Combs that his arrest was likely imminent, he immediately relocated to New York City from Miami on September 5, 2024, to surrender.  At that time, his counsel informed the government of his intent to surrender.  A-45.  Counsel offered to continually share Mr. Combs' location with the government, *id.*, and asked for a time when Mr. Combs could surrender, A-41.

### B.    Arrest and Charges

Despite Mr. Combs' offer to surrender, on September 16, 2024, the government arrested him on a three-count indictment charging racketeering conspiracy, 18 U.S.C. §1962(d); sex trafficking, 18 U.S.C. §1591; and interstate transportation to engage in prostitution, 18 U.S.C. §2421(a).  *See* A-1-14.  The government claims the "core of this case" is "freak-off activity," A-182, which allegedly involved "elaborate and produced sex performance that COMBS arranged, directed, masturbated during, and often electronically recorded."  A-6.  Mr. Combs believes the evidence will show that to the extent such activities occurred, all individuals who participated were adults voluntarily engaged in consensual sex.

### C.    Bail Proceedings

Mr. Combs was arraigned on September 17, 2024 before Magistrate Judge Robyn F. Tarnofsky and pled not guilty.  A-118.  The government sought detention, arguing that Mr. Combs presented a risk of flight, danger to the community, and risk of obstruction and witness tampering.  Despite Mr. Combs' robust bail proposal, Judge Tarnofsky detained him.  *See* A-32-33, A-168.

Mr. Combs appealed.

The district court (Carter, J.) held a bail hearing on September 18, 2024. The court began by noting that the government "primarily seeks detention based on a risk of flight and the danger of obstruction of justice or witness tampering."  A-171.  The court indicated that based upon the parties' written submissions, its "lesser concern … [was] risk of flight," and its "bigger concern deal[t] with the danger of" obstruction and witness tampering.  A-171-72.

#### 1.    *The Government's Proffer Focused On An 8½-year-old Domestic Violence Incident And Vague Allegations Related To Civil Lawsuits*

The government reiterated the indictment's allegations and only vaguely alluded to possible witness testimony and evidence, primarily relying on a widely publicized March 5, 2016 video of Mr. Combs depicting a domestic violence incident with a former girlfriend called "Victim-1" in Count Two.  The government also mentioned text messages and phone calls between Mr. Combs and potential witnesses—primarily witnesses in civil lawsuits filed against Mr.

6

Combs.  A-20, 23-25; A-129-132; A-188-193.  The government went so far as to argue that Mr. Combs' public statements that a civil lawsuit was "riddled with … lies," were "attempts by him to obstruct justice."  A-127.

### 2. The Defense Rebutted Each Of The Government's Arguments

Regarding the March 5, 2016 video, defense counsel explained that Mr. Combs and Victim-1 shared a ten-year romantic relationship that was often mutually toxic.  A-145, A-147-49, A-152, A-217, A-221.  Counsel noted that "countless written communications…tend to negate any lack of consent and any coercion" regarding their sexual activity, and cited evidence showing a long-term loving relationship that became strained by mutual infidelity and jealousy.  A-52.  The "overwhelming" "written communications" describing their consensual sexual relationship included communications concerning their mutual decision to "bring a third party into their intimacy."  A-217-18.  The violence depicted in the March 5, 2016 video was entirely separate, stemming from "jealousy from infidelity" 8½ years ago.  A-217-18, A-221.

Defense counsel cited interviews with "half a dozen" male escorts who participated in the "Freak Offs" described by the government and confirmed they never witnessed anything remotely nonconsensual.  A-155.  Counsel explained that Mr. Combs and Victim-1 both suffered from serious drug problems at the time of

the video and subsequently participated in rehab before eventually separating in

2018.  A-149, A-152, A-217-21.

Counsel further explained Mr. Combs' communications regarding Victim-

1's November 2023 lawsuit.  Years after the couple's separation, a lawyer

representing Victim-1 demanded a $30 million payment from Mr. Combs in

exchange for the rights to a tell-all book Victim-1 had supposedly written.  A-150-

51.  When Mr. Combs refused, Victim-1 retained new counsel, who filed a lawsuit,

which was quickly concluded with a large settlement.  *Id.*  This prompted a torrent

of other lawsuits.  A-151.  Although Mr. Combs communicated with others about

the conduct alleged in these civil suits—including individuals the government now

characterizes as "victims"—at the time, he knew nothing about the SDNY's

investigation and was not engaging in any attempted obstruction.  *Id.*  The

government had no response other than to say that Mr. Combs "certainly suspected

the possibility of an investigation," citing his statements he "was not supposed to

be speaking on the phone."  A-188, A-191.

Defense counsel also rebutted the government's other obstruction and

witness tampering allegations regarding a civil lawsuit filed against Mr. Combs on

September 10, 2024.  After the suit was filed, Mr. Combs spoke with an individual

the lawsuit identified as a prominent witness to his alleged violence.  The

individual in question was very upset about publicity and wanted to make a public

statement that her personal experience diverged from the lawsuit's allegations.  A-153-54, A-197-203.  As counsel explained, this witness was represented by an attorney at the time of the communications and could be an important defense witness with whom the defense will likely continue speaking.  A-198, A-202-03.  Counsel further explained that Mr. Combs had, "with counsel's blessing," "called potential defense witnesses to let them know that counsel would reach out to speak with them."  A-50.

Notably, search warrant affidavits disclosed to the defense on October 7, 2024, confirm ████████████████████████████ ██████ . ████████████████████████████████ ████████████████████████ . But during its proffer to the court, the government concealed this fact—which completely undermines its claim that the timing of the contacts with the witness in September 2024 suggest obstruction.

Although the government vaguely described contacts with two grand jury witnesses, it proffered no evidence of any threats or intimidation.  The government could only state there were "14 total contacts" between Mr. Combs and one witness, and another witness who was contacted "multiple times."  A-189.  Defense counsel explained these contacts involved no obstruction or witness tampering.  For example, one witness contacted Mr. Combs—not the other way around.  A-211.  She reached out to Mr. Combs and told him, "I'm a grand jury

9

witness." *Id.*  After Mr. Combs informed defense counsel, he was instructed not to contact the witness anymore and didn't.  *Id.*  Of course, the defense explained, it must "continue to interview witnesses" to conduct "a responsible defense investigation."  A-165.

### D.  Mr. Combs Proposed A Robust Bail Package With Extremely Restrictive Conditions

In addition to the rebutting the government's proffer, Mr. Combs proposed a strong bail package.  Prior to the district court hearing, the proposed conditions included:

- A $50,000,000 bond co-signed by Mr. Combs and seven family members, secured by Mr. Combs' unencumbered $48,000,000 home, and his mother's home;
- Travel restricted to the Southern District of Florida and Southern and Eastern Districts of New York (to attend Court, meet with counsel, and attend medical appointments);
- Home detention with GPS monitoring;
- Providing Mr. Combs' passport to Pretrial Services;
- Retaining the passports of five other family members;
- Continued efforts to sell Mr. Combs' airplane and a restriction on bringing the plane to any District in which Mr. Combs is located;
- Restricting all visitors to Mr. Combs' residence, except family, caretakers, and friends not considered to be co-conspirators, with no female visitors except family and mothers of Mr. Combs' children—with a daily visitor log shared with Pretrial services;
- No contact with known grand jury witnesses;
- Weekly drug testing by Pretrial Services;
- All other standard conditions of pretrial supervision.

A-42-43.

10

During the hearing, counsel supplemented the package with the following additional conditions—specifically designed to prevent any witness tampering or obstruction:

- 24/7 monitoring of Mr. Combs by a third-party security force, SAGE Intelligence, which employs former federal and state law enforcement officers;

- No access to the internet;

- No phones;

- Restrict visitor access to only a preapproved list of visitors to be shared with the government, Pretrial Services, and the court;

- Video camera monitoring of Mr. Combs if necessary.

A-203-07, A-215.

In addition, during the hearing, defense counsel repeatedly made clear Mr. Combs would accept any other conditions the court deemed necessary. Counsel offered "to put together a protocol so that the court is absolutely satisfied and comfortable that there is quite literally no way that Mr. Combs would be able to conduct any kind of contact…do anything with a witness of any nature." A-204; *see also* A-206 ("[W]e'll do whatever needs to be done."); A-224 ("[W]e can have any protocol that your Honor sees fit…we can do whatever your Honor thinks is necessary.").

11

### E.    The District Court's Ruling

The court denied bail and granted the government's detention request at the end of the September 18, 2024 hearing, stating:

> I find that the government has carried its burden of persuasion by clear and convincing evidence on dangerousness both for obstruction and witness tampering, as well as danger more generally, even if the defense has rebutted the presumption by coming forward with their burden of production.

A-225.  The court stated it "need not reach" flight risk.  *Id.*

The court further stated "the government has proven by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of a person in the community, as well that [Mr. Combs] will not obstruct justice or tamper with witnesses."  A-225-26.

The court rejected Mr. Combs' proposed bail package and adopted the government's argument that, under the proposed conditions, "the defendant would still have access to employees and other individuals" and thus "could … obstruct justice and intimidate witnesses through those folks, through even coded messages if necessary."  A-226.

The court made no findings of fact, and provided no further indication why it concluded detention was necessary.

On October 3, 2024, the case was reassigned to Judge Arun Subramanian.

12

## STANDARDS OF REVIEW

Rulings of law in bail proceedings are reviewed *de novo*, *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011), while historical facts are reviewed for clear error, *United States v. LaFontaine*, 210 F3d 125, 130 (2d Cir. 2000). "[The] scope of review is slightly broader with respect to the 'ultimate determination' that a defendant does, or does not, present a risk" of flight or danger. *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995). Whether conditions will reasonably assure the defendant's appearance and the safety of the community is a mixed question of law and fact reviewed for clear error. *Id.*

"The clearly erroneous standard does not apply … if the court has made an error of law," in which case the court's findings "should be set aside." *United States v. Shakur*, 817 F.2d 189, 196-97 (2d Cir. 1987). "If, for example, the court does not consider the factors set forth in 18 U.S.C. §3142(g) in reaching its ultimate finding on the existence or nonexistence of conditions, the finding will be subject to more flexible review." *Id.* at 197. The court's finding will also be "subject to plenary review if it rests on a predicate finding which reflects a misperception of a legal rule applicable to the particular factor involved." *Id.*

13

## **ARGUMENT**

### I.     The District Court Erroneously Concluded That Mr. Combs Presented A Risk Of Obstructing Justice And Witness Tampering

This Court has held that "'clear and convincing' evidence that there exists a serious risk" of obstruction or witness tampering can justify pretrial detention. *United States v. Leon*, 766 F.2d 77, 82 (2d Cir. 1985); *LaFontaine*, 210 F.3d at 132. But there was no clear and convincing evidence supporting detention here. The circumstances justifying detention in prior cases were completely different, and the court's contrary conclusion reflects a "misperception" of the applicable law. *Shakur*, 817 F.2d at 197.

*First*, the government's proffer concerning alleged obstruction and witness tampering was too thin to support detention. The proffer highlighted two points: the March 5, 2016 video and Mr. Combs' alleged contacts with witnesses. Regarding the 8½-year-old video, the defense's robust competing proffer explained Mr. Combs' decade-long consensual relationship with Victim-1, the video's context, and that both parties had subsequently participated in drug rehabilitation.

And the witness contacts the government cited were minimally relevant or entirely innocuous. For example, the government emphasized that Mr. Combs had contacted witnesses. But these contacts were largely related to civil suits filed before the indictment, and most occurred before Mr. Combs even knew there was

14

an investigation.  These communications—the substance of which the government did not fully disclose—hardly reflect threats, obstruction, or witness tampering.

Even with respect to two grand jury witnesses the government claims Mr. Combs contacted, the government could only vaguely represent that there were "14 total contacts" between Mr. Combs and one witness, and that another witness was contacted "multiple times."  A-189.  That was it.  The government provided no further detail.  Nor did the government share how these witnesses even perceived the contacts.  The government's silence on this point is telling because the proffer was implausible on its face.  While the government suggested "[w]itnesses have universally, one for one, expressed to [prosecutors] their extreme fear of [Mr. Combs], extreme," A-187, at least one of these witnesses proactively reached out to Mr. Combs to tell him she was a grand jury witness, A-211.  And once defense counsel learned Mr. Combs was contacted by a potential grand jury witness, they immediately instructed him to cease any such contact, which he did.  *Id.*

Clear and convincing evidence "requires that the evidence support [the] conclusion with a high degree of certainty."  *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).  The government did not meet this burden.  The proffer provided no basis to believe Mr. Combs had threatened, intimidated, or otherwise attempted to tamper with witnesses and fell far short of demonstrating a "serious risk" of obstruction or witness tampering *in the future*.  *Leon*, 766 F.2d at

15

82.  In any case, the defense's competing proffer adequately rebutted the government's allegations and—at a minimum—left the evidence in equipoise.

*Second*, the court misapplied precedent.  The cases the government relied upon are far afield.  In *Leon*, for example, there was "ample proof that the defendant ha[d] threatened two potential witnesses," including through explicit threats to his arresting officers that he would "get even" and "see to it" they went on "a very long vacation."  *Id.* at 78-79.  "The findings of threats … rest[ed] on strong evidence in the record," including witness testimony at the bail hearing.  *Id.* at 81.  And *LaFontaine* was a bail revocation decision under 18 U.S.C. §3148, so a much lower burden of proof—probable cause—applied.  210 F.3d at 133-34.  Even still, *LaFontaine* rested on actual evidence that while on bail, the defendant shredded documents, attempted to contact and intimidate witnesses, and lied in an affidavit to the court.  *Id.* at 129.  The non-binding decision in *United States v. Bankman-Fried*, No. 23-6914-cr (2d Cir. Sept. 21, 2023), likewise involved a bail revocation proceeding under the lower probable cause standard.

In cases where the government's proffer is as thin as the one here, "the risk of witness tampering or obstruction" is not supported "by clear and convincing evidence."  *United States v. Stein*, 05-CR-0888 (LAK), 2005 WL 8157371, at *2 (S.D.N.Y. Nov. 14, 2005).  Although the district court never explained its

16

reasoning, *see infra* Point III—it appears to have erroneously adopted the government's exaggerated rhetoric.

There was no factual or legal basis for detaining Mr. Combs. He is entitled to pretrial release.

## II.    The District Court Erroneously Concluded No Conditions Of Release Could Suffice

Pre-trial detention is permissible only if the district court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(e)(1). The court has an "obligation to consider all possible alternatives to preventive detention." *Berrios-Berrios*, 791 F.2d at 251. Where, as here, "the court's ultimate finding … rests on a predicate finding which reflects a misperception of a legal rule," the court's decision is "subject to plenary review." *Id.* (citing *Shakur*, 817 F.2d at 197).

The court erroneously rejected Mr. Combs' proposed bail package, which was plainly sufficient. The government claimed the proposed conditions "do not speak at all to [Mr. Combs'] risk of obstruction," as they "still contemplate him having staff and visitors." A-112. But counsel adequately addressed these concerns at the bail hearing by proposing additional conditions. These more restrictive conditions prohibited internet and phone access and included 24/7

17

monitoring by well-trained third-party security personnel and video monitoring if necessary.

The proposed conditions reasonably mitigate any perceived risk. The Bail Reform Act expressly contemplates releasing a defendant into "the custody of a designated person[ ] who agrees to assume supervision ... if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community." 18 U.S.C. §3142(c)(1)(B)(i). There is no reason 24/7 monitoring by trained third-party former state and federal law enforcement officers could not prevent obstruction, particularly where the defendant will not have electronic devices and thus could not directly contact any witnesses. Courts have found similar proposals sufficient to ensure against obstruction, flight risk, and danger in past cases. *See United States v. Williams*, No. 07-CR-1102 (JSR), 2008 WL 686622, at *1 (S.D.N.Y. Mar. 12, 2008) (concluding proposed conditions reasonably mitigated danger to community and risk of witness tampering because if a defendant is "strictly confined to [an] apartment … [with] electronic monitoring, there is no meaningful likelihood [he] will engage in any conduct constituting a danger"); *United States v. Sabhnani*, 493 F.3d 63, 77 (2d Cir. 2007) (describing a comparable package as "extraordinary" and vacating and remanding

18

for release on stated conditions); *United States v. Dreier*, 596 F. Supp. 2d 831, 833 (S.D.N.Y. 2009) (approving similar bail package).

The district court rejected the proposed bail package for purely speculative reasons. The court stated the proposed conditions would permit Mr. Combs to "obstruct justice and intimidate witnesses" through "employees and other individuals" and "even coded messages if necessary." A-226. There was, however, not a shred of evidence that Mr. Combs had used third parties to tamper with witnesses through "coded messages." Nor did the government cite any evidence supporting its bald claim that Mr. Combs "used intermediaries to reach out to people." A-190. Instead, their proffered example involved a direct contact—one that occurred in November 2023, when the only pending proceeding was a civil suit: The government alleged that after Victim-1 filed her lawsuit, another alleged "victim" (also a girlfriend) initiated contact by texting Mr. Combs, who subsequently called her and recorded their conversations on another person's phone. *Id.* This didn't involve an "intermediary" and is hardly evidence of obstruction. Even apart from the fact that Mr. Combs could not have "contemplat[ed] any particular official proceeding" at the time,[1] why would a

---

[1] *Arthur Andersen v. United States*, 544 U.S. 696, 707 (2005) (18 U.S.C. §1512 requires "'nexus' between the obstructive act and the proceeding"); *see also United States v. Aguilar*, 515 U.S. 593, 599-600 (1995) (18 U.S.C. §1503 requires knowledge that one's actions will affect pending grand jury proceeding).

19

person engaged in witness tampering *record* the conversation?  He was obviously

recording the exchange to protect himself from further false accusations.

Regardless, as a practical matter the conditions are sufficient to alleviate any

purported obstruction risk.  The proposed package contemplated a pre-approved

visitor list, and counsel made clear it could be further limited in any way the court

saw fit.  *See* A-204, A-206, A-224.  The only necessary visitors are members of the

defense team, who obviously will not be assisting any effort to obstruct justice.  To

the extent family members are approved for the visitor list, security and video

monitoring is sufficient to ensure against the purported risk of any attempt to

indirectly contact a witness.[2]  The same would be true if employee visits were

contemplated, but to be clear, there is no need for concern about "employees and

friends and the like."  A-216.  Mr. Combs will not request that any employee or

friend be permitted to visit him.  Nor would it be "necessary for him to speak with"

employees.  A-214.[3]

For such conditions to be adequate, the Act requires only a "reasonable

assurance [and] does not demand absolute certainty."  *United States v. Alston*, 420

---

[2] Since there was no history of "coded messages," there is zero risk of Mr. Combs
using such code under monitoring.  How would any visitor even know how to
interpret the supposed "code"?  Using a code requires a prior understanding of the
meaning of any coded terms.

[3] Mr. Combs would also consent to home detention within the district, if housing
can be arranged.

F.2d 176, 178 (D.C. Cir. 1969).  To require the latter and deny release on

conditions based on speculative doubts would only be "a disguised way of

compelling commitment."  *Id*.  Indeed, this Court has already rejected the theory

that certain "conduct is so extreme and aberrant … such that no set of conditions

could reasonably assure the safety of the community."  *United States v. Mattis*, 963

F.3d 285, 293 (2d Cir. 2020).  Here, the conditions proposed were adequate

relative to the weight of the purported risks.[4]

Mr. Combs should be released because, regardless of the government's

untested allegations, the proposed conditions will reasonably assure his appearance

and the safety of the community.

### III.    The District Court Erroneously Failed To Make Factual Findings And Weigh The Required 18 U.S.C. § 3142(g) Factors

The Bail Reform Act's statutorily mandated procedures represent

"Congress' careful delineation of the circumstances under which [pretrial]

detention" is acceptable.  *Salerno*, 481 U.S. at 751.  Failure to follow these

procedures, or reliance "on an extrastatutory inquiry," constitutes "an error of

law."  *Shakur*, 817 F.2d at 200, 197.  The district court committed legal error by

failing to make any factual findings or weigh the required factors.

---

[4] The district court's reasoning did not turn on § 3142(e)(3)'s presumption of detention, *see* A-225, which the defense rebutted for the reasons discussed.

21

The Act unambiguously requires "written findings of fact and a written statement of reasons for a decision to detain." 18 U.S.C. §3142(i)(1). This requirement is "specifically designed to further the accuracy" of detention hearings, *Salerno*, 481 U.S. at 752, and is "intended to ensure that the district court's reasons for its decision are sufficiently clear to permit meaningful appellate review," *English*, 629 F.3d at 321.

The Act further states courts "shall … take into account" four factors "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). The factors include the nature and circumstances of the charges, the weight of the evidence, the defendant's history and characteristics, and the nature and seriousness of any danger to the community. *Id.* § 3142(g)(1)-(4). These factors ensure the Act is administered consistent with due process. *Salerno*, 481 U.S. at 751. Thus, "the district court *must consider* the [18 U.S.C. § 3142(g)] factors," *Mattis*, 963 F.3d at 291, as "the ultimate finding … properly can be reached only after [their] consideration," *Shakur*, 817 F.2d at 196.

In the cases the government relied on below, the detention orders were supported by detailed factual findings and explicit weighing of the §3142(g) factors. *See, e.g.*, *United States v. Maxwell*, 20-CR-330 (AJN) (S.D.N.Y.), ECF 93 at 79-91; *United States v. Maxwell*, 527 F. Supp. 3d 659 (S.D.N.Y. 2021), *aff'd,*

No. 21-770 (2d Cir. Apr. 27, 2021); *United States v. Kelly*, No. 19-CR-286

(AMD), 2020 WL 2528922 (E.D.N.Y. May 15, 2020), *aff'd*, No. 20-1720, 2020

WL 7019289 (2d Cir. Sept. 8, 2020); *United States v. Epstein*, 425 F. Supp. 3d

306, 309 (S.D.N.Y. 2019); *United States v. Raniere*, No. 18-CR-204-1 (NGG),

2018 WL 3057702, at *1 (E.D.N.Y. June 20, 2018).

In contrast, the decision here reflects a wholesale departure from the Act's

requirements. The court made no factual findings and failed to weigh the

statutorily enumerated factors. Although "robotic incantations" are not required,

*Mattis*, 963 F.3d at 292, it is not at all clear what "facts the [district court] use[d] to

support" its decision, 18 U.S.C. §3142(f)(2). Nor is it clear what evidence—if

any—the court credited, why or on what basis it rejected the defense proffers

rebutting the government's claims, or how it made its ultimate determination.

The absence of such findings is particularly troubling here because the

government proceeded largely by proffer—"simply stat[ing] in the most general

and conclusory terms what it hoped to prove." *United States v. Martir*, 782 F.2d

1141, 1147 (2d Cir. 1986). Although courts may rely on proffers, "the exercise of

that discretion should reflect an awareness of the high stakes involved." *Id.* at

1145. But here, the district court took no additional steps to "ensure the reliability

of the evidence," *LaFontaine*, 210 F.3d at 131, and because counsel contested the

government's version of events with a competing defense proffer, the evidence was—at a minimum—in equipoise.

Without meaningful factual findings and weighing of the evidence, the detention order lacked any basis. This Court has reversed similarly defective detention orders. *See United States v. Friedman*, 837 F.2d 48, 50 (2d Cir. 1988) (vacating and remanding where detention "order contain[ed] only implicit findings relating to risk of flight" and "no finding whatsoever on [obstruction]"); *Berrios-Berrios*, 791 F.2d at 251 (remanding where district court "fail[ed] to explain on the record" the basis for conclusions). It should do so here too.

## <u>CONCLUSION</u>

For the foregoing reasons, the district court's detention order should be reversed. The Court should order Mr. Combs' release under the conditions proposed below, or any additional conditions the Court deems necessary.

Dated:   New York, New York           /s/Alexandra A.E. Shapiro
         October 8, 2024.              Alexandra A.E. Shapiro
                                       Jason A. Driscoll
                                       SHAPIRO ARATO BACH LLP
                                       1140 Ave of the Americas, 17th Floor
                                       New York, New York 10036
                                       (212) 257-4880

                                       *Attorneys for Defendant-Appellant*
                                       *Sean Combs*

24

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.  The undersigned counsel of record for Defendant-Appellant Sean Combs certifies pursuant to Federal Rule of Appellate Procedure 27 that the foregoing brief contains 5,174 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 27(d)(2), according to the Word Count feature of Microsoft Word 2024.

2.  This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2024 in 14-point font of Times New Roman.

Dated:    October 8, 2024

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro

25